# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Walter Jackson, # 91774, ) | Civil Action No. 9:11-2963-MBS-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Ms. Young, McCormick Corrections ) | |
| Mail Room Personnel and Ms. Parler, ) | |
| Classification Case Worker, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on September 4, 2012. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on September 5, 2012, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to file a properly supported response, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter file a memorandum in opposition on October 1, 2012.



- 1 -

The Defendants' motion is now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified Complaint[2] that on September 26, 2011 he received a notice of unauthorized correspondence pursuant to SCDC Policy "PS-10108" (relating to inmate correspondence privileges). Plaintiff alleges that this notice, which was signed by the Defendant Young, identified the unauthorized correspondence as being Plaintiff's parents' marriage license that his sister had mailed back to him after she had had a copy made. Plaintiff alleges that he had mailed this document to his sister about two (2) weeks earlier. Plaintiff alleges that his sister is on both his visitation and correspondence list, and that the marriage license had originally been sent to the Plaintiff by the Clerk of the Probate Court in Abbeville, South Carolina, and was approved by corrections officials at that time (apparently when he was being held at the Greenwood Correctional Center). Plaintiff alleges that his "rights" were violated by the Defendant Young (who apparently works in the mail room) because he is indigent. Plaintiff also complains that Young does not pass out legal mail until the day after she receives it.

Plaintiff further alleges that the Defendant Parler took his parents' marriage license from the mail room to her classification office and out of the envelope that it was mailed in, and that although she subsequently gave it to him when he asked for it, she came back two hours later and

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).



told him he had to give it back (which he did to avoid being sent to lockup).  Plaintiff alleges these actions denied him his constitutional rights, and requests that all prison regulations which deny prisoners mail to which they are entitled should be "remove[d]", as well as monetary damages.  See generally, Verified Complaint, with attachment [Petition].

In support of summary judgment in the case, the Defendant Joyce Young has submitted an affidavit in which she attests that she is the Postal Director at the McCormick Correctional Institution (MCI), where Plaintiff is housed.  Young attests that on or about September 26, 2011, while she was scanning inmate mail, she noticed a letter to the Plaintiff from Marie Lyons that contained a copy of a marriage licence.  Young attests that inmates are prohibited by SCDC policy from possessing copies of personal identification documents other than those issued by the Department of Corrections.  Young attests that, pursuant to SCDC procedure, she completed a Notice of Rejected Incoming/Outgoing Correspondence, sent a copy to the Plaintiff, and forwarded the marriage license to Plaintiff's Classification caseworker.  Young has attached to her affidavit a copy of the notice she prepared as Exhibit A.

Young attests that mail is received each morning at approximately 10:00 a.m. and is then sorted and scanned.  General mail is delivered the same day it is received, while inmates are sent orders to report to the mail room to receive legal mail, which must be signed for.  Young attests that general outgoing mail must be left unopened pursuant to SCDC policy, while outgoing legal/privileged mail may be sealed.  Young attests that she handles all inmate mail pursuant to SCDC policy and procedure, and that she does not discriminate against indigent inmates or any other inmates.  See generally, Young Affidavit, with attached Exhibit A [Notice of Rejected Incoming/Outgoing Correspondence].



The Defendant Janice Parler has also submitted an affidavit, wherein she attests that she is a Classification Caseworker at MCI. Parler attests that she received the marriage licence of Plaintiff's parents from the mail room, mistakenly thought Plaintiff was permitted to have it, and gave it to him. However, Parler attests that when she checked with her supervisor, she was informed that inmates were not authorized to keep personal identification documents of that nature in their property and was instructed to get back the marriage license. Parler attests that when Plaintiff returned the marriage license to her, she informed him that she had made a mistake and that SCDC policy permitted the document either to be kept in Plaintiff's Warden's Jacket, or to be mailed out. See generally, Parler Affidavit.

As attachments to his memorandum in opposition to summary judgment, Plaintiff has submitted several exhibits. Plaintiff has attached a copy of his receipt from the Probate Court wherein he obtained a certified copy of the marriage licence (Exhibit A), the original Notice of Rejected Incoming/Outgoing Correspondence he received from the Defendant Young (Exhibit B), and a copy of what purports to be a "Warden's Message" from the Greenwood Correctional Center (a minimum security facility) (Exhibit C).

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion



with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

While prisoners do retain some First Amendment rights; see Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Witherow v. Paff, 52 F.3d 264, 265 (7th Cir. 1995)[Prisoners enjoy a First Amendment right to send and receive mail]; restrictions on the possession of property deemed by prison officials to be inappropriate for personal possession by inmates are routinely upheld when the policies at issue are reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987) ["...when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penalogical interests"]; cf. Lasure v. Gore, No. 08-320, 2009 WL 1748718, at * 7 (D.S.C. June19, 2009); see also Montanye v. Haymes, 427 U.S. 236, 242 (1976) [if a prisoner's confinement is within terms of the sentence imposed upon him and does not violate other constitutional provisions, "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight"]. Here, it is undisputed that the prison policy at issue prohibits inmates from possessing copies of personal identification documents other than



those issued by the Department of Corrections,[3] and under Turner there is no constitutional infirmity with respect to this regulation if there is a valid, rational connection between the regulation and the legitimate governmental interest put forth to justify it, there are alternative means of exercising the right at issue that remain open to inmates, an accomodation of the asserted constitutional right would have an adverse impact on guards and other inmates and on the allocation of prison resources generally, and there are no ready alternatives.  Turner, 482 U.S. at 89-90.

With respect to the first criteria, Defendants contend that allowing inmates to possess personal identification documents can result in disagreements among inmates and allow for possibilities of misuse.  Defendants' argue that restricting identification documents to those provided by the Department of Corrections provides a streamlined, efficient method to maintain security at its various institutions, as well as providing a ready method for inmates to identify themselves to officers and other personnel, such as for medical, education, library and food services.  Further, while it may be arguable that it would be difficult to use a marriage license to effect any kind of identity fraud or to give rise to a dispute, it would be necessary for prison officials to devote resources to review and consider such requests, with the added problem that once the prison starts making accommodations or exceptions for one type of identification document, then they will be placed in the position of having to review all types of identification documents upon the request of inmates to determine if an exception should be made here or there, which could then also give rise

---

[3]A copy of the policy at issue, SCDC Policy PS-10.08, "Inmate Correspondence Privileges", has not been provided to the Court for review.  However, neither party disputes that this is what the policy provides.  See Young Affidavit, attached Exhibit A; Plaintiff's Verified Complaint, ¶ 1. Nevertheless, Defendants are instructed to file a copy of this policy with the Court as an exhibit so that the District Judge assigned to this case can have this document to review as part of her consideration of any objections filed to this Report and Recommendation.



to claims of discrimination between inmates in the future based on exceptions granted or denied in the past. Therefore, there is no genuine issue of fact as to whether the Defendants have set forth a rational penological interest for this policy, while a contrary ruling could certainly have an adverse impact on guards and other inmates and on the allocation of prison resources generally. Turner, 482 U.S. at 89 [Prison regulation valid if it is reasonably related to a legitimate penological interest]; see also White v. White, 886 F.2d 721, 723 (4th Cir. 1999)["Reasonable regulations are necessary to balance the rights of prisoners with budgetary considerations"]; cf. Jones v. Holladay, No. 09-876, 2010 WL 1052912, at * 3-4 (E.D.Ark. Mar. 5, 2010), adopted by, 2010 WL 1052908 (E.D.Ark. 2009); see also Overton v. Bazzetta, 539 U.S. 126, 131 (2003) [Noting that "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration"].

    Additionally, there are clearly alternative means of exercising the right asserted that remain open to prison inmates, as it is clear that Plaintiff is not prohibited from having access to his parents' license, he is just prevented from keeping it among his personal possessions in his cell. Plaintiff is permitted to keep the marriage license in his Warden's Jacket, where he would have access to it if necessary. Parler Affidavit, ¶ 3. See Lewis v. Casey, 518 U.S. 343, 349-353 (1996)[Inmate alleging denial of constitutional right must be able to demonstrate "actual injury" caused by the policy or procedure at issue]. Plaintiff has also failed to advance any ready alternatives to the policy at issue - he wants to be able to keep the marriage license in his cell, which is what the SCDC policy prohibits, not somewhere else such as his Warden's Jacket. Therefore, Plaintiff has failed to submit evidence sufficient to give to a genuine issue of fact as to whether the regulation at issue violates the Turner standard, or that there is anything unconstitutional about the Defendants'

- 7 -



personal identification document policy as applied to inmates such as Plaintiff. Turner, 482 U.S. at 89 [Prison regulation valid if it is reasonably related to a legitimate penological interest]; cf. Parkhurst v. Ruettgers, No. 92-8018, 1992 WL 219042 at * 1 (10th Cir. Sept. 10, 1992["The withholding of identification material . . . is reasonably related to legitimate prison goals, including but not limited to the discouragement of escape."]; Overton, 539 U.S. at 131 [An inmate does not retain rights inconsistent with proper incarceration].

Plaintiff also complains that he was (apparently) allowed to have the marriage license in his personal possession while he was at the Greenwood Correctional Center, but was then denied the right to retain this document by MCI. However, this fact (assumed to be true for purposes of summary judgment) again does not indicate a constitutional violation. Plaintiff's own Exhibit C shows that the Greenwood institution was a minimum security facility, where prison rules and regulations may be more flexible. In any event, even assuming Greenwood and/or MCI misapplied a prison regulation with respect to maintenance by prisoners of identification documents, as no *constitutional* violation has been shown, any such error would not in an of itself allow this case to proceed. See Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]); Scott v. Hamidullah, No. 05-3027, 2007 WL 904803 *5 n.6 (D.S.C. Mar. 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)); Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that Defendants did not follow their own policies fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing Riccio, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's



failure to abide by that law is not a federal due process issue]).

Finally, with respect to Plaintiff's mail being opened and that he is required to sign for legal mail, even Plaintiff concedes in his brief opposing summary judgment that inmate correspondence can be lawfully screened.  It is an unfortunate fact of life that prisons are dangerous places, both for the inmates themselves as well as for staff and visitors.  As such, courts leave the management and policies of such institutions to the professionals whose job it is maintain order and safety.  see In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ["Prison officials 'should be accorded wide-ranging deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security'"] (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)); Overton, 539 U.S. at 132 ["We must accord substantial deference to the professional judgment of prison administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them"].  Plaintiff has submitted no evidence to show a constitutional violation with respect to these issues.  Couch v. Jabe, No. 11-34, 2012 WL 3043105 at * 7 (W.D.Va. July 25, 2012)["Prison officials undoubtedly have the right to screen mail entering a correctional facility to prevent the introduction of items that undermine security, good order, discipline, or rehabilitation."].

### Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.



- 9 -

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

December 17, 2012
Charleston, South Carolina



- 10 -

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

